**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

ALVARO DANIEL SOZA ORDONEZ,

      Petitioner,

      v.                                Case No. 2:26-cv-02298-BCL-cgc

CHRISTOPHER BULLOCK,
Field Office Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

      Respondent.

---

### ORDER DENYING TEMPORARY RESTRAINING ORDER AND § 2241 PETITION

---

Petitioner Alvaro Daniel Soza Ordonez, proceeding *pro se*, has filed a Petition for Habeas Corpus under 28 U.S.C. § 2241, by which he challenges his detention without an individualized bond hearing. Doc. 2 at 3. Contemporaneously, Petitioner filed a Motion for Temporary Restraining Order and Preliminary Injunction. Doc. 3. Petitioner seeks immediate stay of his removal from the United States and the Western District of Tennessee pending resolution of his Habeas Corpus petition. *Id.* at 1.

As a preliminary housekeeping matter, the United States Court of Appeals for the Sixth Circuit has held that the "district director"—now the Field Office Director—for the place of confinement is the proper respondent to a Section 2241 petition filed by an alien challenging his confinement. *See Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003). Here, that is now Christopher Bullock, Field Office Director for the New Orleans Field Office, United States Immigration and Customs Enforcement. The Clerk is therefore **DIRECTED** to modify the docket

1

to replace Trinity Minter with Christopher Bullock. *See* Fed. R. Civ. P. 25(d). All other respondents are **DISMISSED.**

As to the merits of the Petition for Habeas Corpus and Petitioner's Motion for a Temporary Restraining Order and Preliminary Injunction, the Petition (Doc. 2) and Motion (Doc. 3) are **DENIED** for the reasons that follow.

## BACKGROUND

Petitioner is a citizen of Nicaragua who entered the United States in December of 2022. Doc. 2 at 2; Doc. 2-1 at 7. On February 9th, 2023, Petitioner was served with a Notice to Appear charging him with being "an arriving alien" who was not "admitted or paroled after inspection." Doc. 8-1 at 1. On March 12th, 2024, Petitioner filed an Application for Asylum from Nicaragua. Doc 2-1 at 19. Petitioner characterized his legal status for entry into the United States as "Unknown." *Id.* at 7.

On November 23rd, 2025, Petitioner was stopped at a traffic checkpoint near his residence. Doc. 3 at 3. Since that day, Petitioner has been detained at the West Tennessee Detention Facility in this District. Doc. 3 at 1. He seeks an individualized bond hearing to which he claims to be entitled by law under 8 U.S.C. § 1226(a). *Id.* at 4.

After being detained, Petitioner appeared before the Memphis Immigration Court on three occasions. Doc. 2 at 3. On January 20th, 2026, Petitioner received a bond hearing with an immigration judge but claims he was denied bond without a "full individualized bond hearing." *Id.* On February 23rd, 2026, the Immigration Court held a hearing on the motion by Department of Homeland Security ("DHS") to pretermit Petitioner's asylum claim under the "safe-third country bar of Section 208(a)(2)(A)." Doc. 8-2 at 5. The Immigration Court granted the motion and ordered Petitioner to be removed to Guatemala or, in the alternative, to Ecuador. *Id.* at 6. On March 3rd,

2

2026, Petitioner signed a waiver stating that he no longer wished to reserve appeal and desired removal as soon as possible. Doc. 8-3 at 1. Petitioner did not file a notice of appeal and the deadline to do so has also passed. Doc. 8 at 2; Doc. 8-2 at 6.

## **LEGAL STANDARD**

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge his detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Temporary restraining orders and preliminary injunctions are "extraordinary equitable remed[ies] that [are] never awarded as of right." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain such relief, the movant must "make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* at 346 (quoting *Winter*, 555 U.S. at 20). "Thus, '[t]he party seeking a preliminary injunction bears the burden of justifying such relief.'" *A.C.L.U. Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)). "If the plaintiff fails to show a likelihood of success on the merits, the court may deny [the motion for a temporary restraining order] without any further consideration." *U.S. Sportsmen's All. Found. v. Ctrs. for Disease Control & Prevention*, 167 F.4th 813, 818 (6th Cir. 2026) (citing *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020)).

3

## ANALYSIS

The Court denies both the Petition and the Motion because Petitioner's claims fail on their merits. Petitioner's failure to exhaust his administrative remedies dooms his statutory claims, which in any event fail on their merits. And Petitioner's detention as required by statute does not violate the Constitution.

### I.    Petitioner's claims challenging application of 8 U.S.C. § 1225.

#### A.  The Exhaustion Doctrine precludes review of Petitioner's statutory claim.

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). That requirement makes obvious sense when Congress requires exhaustion. It arguably makes less sense when, as in Section 2241, Congress has not done so. Perhaps the so-called prudential exhaustion doctrine—a matter of "sound judicial discretion," *id.*—can be explained as an aspect of ripeness, the idea being that there is no ripe dispute if the Executive Branch has not had its final say. Or perhaps it is a shirking of the federal courts' "virtually unflagging" duty to exercise jurisdiction in cases properly before them. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

In any event, both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted).

4

True, the exhaustion requirement can be excused if exhaustion would be futile. But, as the Sixth Circuit has recently explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed." *Smith v. U.S. Sec. & Exch. Comm'n*, No. 24-3907, 2026 WL 850806, at *7 (6th Cir. Mar. 27, 2026).[1] And, here, the immigration judge or Board of Immigration Appeals ("BIA") could certainly grant petitioner a bond hearing or release on bond if he were to prevail on his claims; indeed, the whole theory of his claims is that the law compels the immigration judge to give him such a hearing (and not, say, that the federal courts should be stepping in to run bond proceedings on a categorical basis). And while Petitioner suggests that the fact that he is imprisoned warrants an exception to the exhaustion requirement, he cites no authority for that proposition, which would swallow the general requirement for exhaustion for aliens challenging their removal or detention relating thereto. Petitioner's statutory claims are thus barred by the exhaustion doctrine and due to be rejected for that reason alone.

### B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.

Petitioner argues that he is entitled to an individualized bond hearing under 8 U.S.C. § 1226(a). Doc. 2 at 3. When Petitioner was first apprehended, his statutory eligibility for a bond hearing was determined by whether his detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). Section 1225(b)(2) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien

---

[1] *Smith* addressed the futility exception in the context of an express exhaustion requirement that excepted situations in which "there was reasonable ground for . . . failure to" exhaust. 2026 WL 850806, at *5 (quoting 15 U.S.C. § 78y(c)(1)). That makes no difference: There is no logical reason for treating the concept of futility differently in the context of a prudential rule than in the context of a statute with a generally worded exception that encompasses the concept of futility.

seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). In contrast, Section 1226(a) provides, in relevant part:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--

**(1)** may continue to detain the arrested alien; and

**(2)** may release the alien on--

> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

> **(B)** conditional parole . . . .

8 U.S.C. § 1226(a)(1)–(2).

Thus, Petitioner was (and remains) an "applicant for admission" subject to mandatory detention under Section 1225(b)(2). "Congress defined 'applicant for admission' broadly in Section 1225(a)(1) to include all 'alien[s] present in the United States who have not been admitted.'" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504 (5th Cir. 2026); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.").[2] That definition encompasses Petitioner because he is present in the United States without ever having been legally admitted.

---

[2] Statutory language underscores the point in providing that "'admission'. . . mean[s], with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13) (emphasis added). Until his entry into the United States is lawful, Petitioner remains an "applicant for admission," and thus his detention during removal proceedings is mandatory under Section 1225(b)(2). *See Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *2 (8th Cir. Mar. 25, 2026).

*See* Doc. 2-1 at 7; *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *4 (8th Cir. Mar. 25, 2026). The passage of time makes no difference. Unless and until Petitioner is granted authorization and lawfully admitted into the United States, he remains an "applicant for admission." As such, the Petitioner's detention during removal proceedings was mandatory under Section 1225(b)(2).

Petitioner asserts that Section 1225(b)(2) does not apply to him because he is no longer an "arriving alien." Doc. 2 at 3. That argument is inconsistent with the actual statutory language which sweeps broadly to cover all "applicant[s] for admission." If Congress had intended Section 1225(b)(2) to apply only to "arriving aliens," it surely would have done so, a point highlighted by Congress' use of that phrase elsewhere in Section 1225. *See Buenrostro-Mendez*, 166 F.4th at 504.

In any event, whether Petitioner was originally subject to detention under Section 1225(b)(2) or Section 1226(a) is now beside the point. As the Government points out, Petitioner is now subject to a final order of removal (Doc. 8-2). As a result, he is subject to Section 1231(a)(2)'s mandate: "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). Petitioner offers no argument to the contrary, and in fact has not even addressed his final order of removal. The final order of removal renders moot Petitioner's challenges to his detention, which in any event fail for the reasons stated in this Order.

**II.    Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 did not violate the Due Process Clause.**

The exhaustion doctrine does not bar review of Petitioner's constitutional claims because the BIA cannot adjudicate them. *See Smith*, 2026 WL 850806, at *7; *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) (citations omitted). Therefore, the Court will not require exhaustion. But those claims also fail on the merits.

Petitioner claims that his detention without an individualized bond hearing violated the Due Process Clause. Doc. 2 at 4 (citing *Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Rodriguez*

7

*Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)). "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903)). But, when a noncitizen has not been lawfully admitted to the United States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" because such noncitizens have "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138, 140 (2020). This is the result of "the so-called 'entry fiction' theory of immigration law," under which "[a]liens who have not 'entered the United States within the meaning of the law,' i.e., who were never lawfully admitted and do not have leave to remain, are 'still in theory of law at the boundary line,'" *Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *11 (W.D. Tenn. 2026) (Norris, J.) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)), where they have only those rights provided by Congress. *See Thuraissigiam*, 591 U.S. at 140. And, here, Congress did not provide a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A).

Petitioner misplaces his reliance on *Jennings v. Rodriguez*. In *Jennings*, the Supreme Court rejected a constitutional avoidance argument, holding that Section 1225 *requires* detention *until* it is determined whether the detained noncitizen is admissible or instead due to be removed. 583 U.S. at 296–98. The case did not create a constitutional entitlement to a bond hearing, much less determine that such an entitlement would be triggered on a timeline—say, a certain number of months in detention—relevant here. As noted above, there is no constitutional entitlement. *See supra*, at 7. And if there is, Petitioner has cited no authority supporting the idea that his detention would fall on the unconstitutional side of that line. In sum, neither the governing statutes nor the

8

Constitution guarantee Petitioner an individualized bond hearing in connection with removal proceedings. Those claims therefore do not support the Petition or the Motion.

**III.   Petitioner has received all process to which he was due for his third-country removal.**

In passing, Petitioner states that on February 23rd, 2026, the immigration judge "raised the prospect of deportation to a third country—a country other than Nicaragua," which "would expose Petitioner to persecution or torture in a country where he has no ties and where he may be at serious risk." Doc. 2 at 3. Petitioner's actual claim is that "removal to Nicaragua or a third country without adequate CAT/withholding review while this petition is pending would violate" the law. Doc. 2 at 4–5.

Petitioner has forfeited this argument by briefing it in only a cursory fashion, without explanation or citation to authority. And the arguments he does make—concerning bond—are disconnected from any request to prevent removal to third countries (or anywhere else)—which means the Court cannot award that relief. *See Nealson v. Owens*, No. 7:23-CV-00445, 2024 WL 1977180, at *1 (W.D. Va. May 3, 2024) (denying relief where "the motion does not seek to prevent harm caused by the conduct alleged in the operative complaint"). Moreover, to the extent Petitioner is seeking to prevent execution of a removal order, 8 U.S.C. § 1252(g) bars this Court from awarding that relief.

In any event, Petitioner has received the review to which he briefly claims entitlement: Petitioner's Final Order of Removal (Doc. 8-2) reflects that on February 23rd, 2026, the Immigration Court held a hearing on Petitioner's concerns regarding third-country removal when

9

it considered DHS' motion to pretermit his application for asylum under the "safe-third-country"

bar. Doc. 8-2 at 3.[3] In accordance with the relevant statutes, the Immigration Court found:

> (1) the Department of Homeland Security provided reasonable notice of its intent to effectuate third country removal to Guatemala or Ecuador;
> (2) Petitioner "failed to prove by a preponderance of the evidence that he will more likely than not be persecuted or tortured in Guatemala or Ecuador"; and
> (3) Petitioner had thirty (30) calendar days from the issuance of the order to file a notice of appeal.

*Id.* at 5–6. Thus, Petitioner's concerns were addressed by the Immigration Court and he has waived

or at minimum forfeited further review of this issue. *See* Doc. 8-3 (Petitioner stating that he "no

longer want[s] to reserve appeal and want[s] to be removed as soon as possible"). This claim thus

cannot support the Petition and the Motion.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 2) and Motion for

Temporary Restraining Order and Preliminary Injunction (Doc. 3) are **DENIED**. The Clerk is

**DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED**, this 8th day of April, 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE

---

[3] The "safe-third-country" bar of the Immigration and Nationality Act refers to 8 U.S.C. § 1158, which provides:

> [Authority to apply for asylum] shall not apply to an alien if the Attorney General determines that the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection, unless the Attorney General finds that it is in the public interest for the alien to receive asylum in the United States.

8 U.S.C. § 1158(a)(2)(A).